UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANKIE C. JAMES,

|  | **REPORT AND**
**RECOMMENDATION** |

                    Plaintiff,

                                                    09-CV-424
                                                    (GLS/VEB)

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____

## I. INTRODUCTION

In August of 2005, Plaintiff Frankie C. James filed an application for supplemental security income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since January 15, 1990, due to Crohn's Disease and other ailments. The Commissioner of Social Security partially denied Plaintiff's application.

Plaintiff, through her attorneys, Olinsky & Shurtliff, Howard D. Olinsky, Esq. of counsel, commenced this action on April 10, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for SSI benefits on August 23, 2005, alleging disability beginning on January 15, 1990. (T at 48-50).[1]  The application was denied initially. (T at 33, 34-37).  On January 18, 2006, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (T at 38). Although the request was untimely, the Commissioner found good cause to excuse the default. (T at 40).  A hearing was held on February 5, 2008, in Syracuse, New York before ALJ Barry E. Ryan. (T at 461).  Plaintiff appeared along with Michael Ramieri, Esq. (T at 461).  However, due to an apparent technical error, the hearing was not recorded. (T at 24). As such, a second hearing was held on April 15, 2008, before ALJ Ryan.  (T at 441). Plaintiff was accompanied by Laura Weekly.   Although the record identified Ms. Weekly as an attorney (T at 441), Plaintiff describes her as a non-attorney representative from the Legal Aid-Society of Mid-New York. (Docket No. 11, at p. 2).

On April 24, 2008, the ALJ issued a decision denying Plaintiff's application. (T at 10-22).  Plaintiff filed a timely request for review by the Appeals Council. (T at 432-440).  The ALJ's decision became the Commissioner's final decision on March 12, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 5-7).

Plaintiff, through counsel, timely commenced this action on April 10, 2009.  (Docket No. 1).  The Commissioner interposed an Answer on August 12, 2009. (Docket No. 9). Plaintiff filed a supporting Brief on October 2, 2009. (Docket No. 11).  The Commissioner filed a Brief in opposition on December 31, 2009. (Docket No. 13).

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded to the Commissioner for further proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 23, 2005, the application date. (T at 15).  The ALJ determined that Plaintiff had the following impairment considered "severe" under the Act: Crohn's Disease. (T at 15). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 18).  The ALJ found that Plaintiff

---

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

retained the residual functional capacity ("RFC") to perform the full range of light work, including lifting 20 pounds occassionally, 10 pounds frequently, standing/walking/sitting for about 6 hours in an 8-hour workday. (T at 18).

The ALJ determined that Plaintiff is unable to perform any past relevant work. (T at 21). The ALJ concluded that, considering Plaintiff's age (52 years old as of the application date), education (high school), and RFC (light work), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21). Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act, since the date the application was filed. (T at 22). As noted above, the ALJ's decision became the Commissioner's final decision on March 12, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 5-7).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers four principal arguments in support of her position. First, Plaintiff contends that the ALJ erred at step 2 of the sequential evaluation because he did not find that her arthritis, osteoporosis, and osteopenia were severe impairments. Second, Plaintiff argues that the ALJ's RFC determination was contrary to the applicable standard and is not supported by substantial evidence. Third, she asserts that the ALJ did not properly evaluate her credibility. Fourth, Plaintiff argues that the ALJ erred by failing to consult a vocational expert. Each argument will be addressed in turn.

###### a.    Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

The ALJ found that Plaintiff's Crohn's Disease was a severe impairment.  (T at 15). However, the ALJ concluded that while Plaintiff had anemia, alleged low back pain, alleged

joint pain, bilateral trigger thumbs, and was status post-surgery for bowel resection, the record failed to show that these impairments had more than minimal limitation's on her ability to perform basic work-related activities for a continuous period of at least 12 months. (T at 18). Further, the ALJ found that Plaintiff's alleged mental/emotional impairments were not supported by sufficient objective evidence to establish that they were severe within the meaning of the Act. (T at 18).

Plaintiff challenges the ALJ's assessment. Plaintiff notes that, in addition to Crohn's Disease, she was diagnosed with osteoporosis of the lumbar spine and left femoral neck with high fracture risk. (T at 391). Plaintiff also points to evidence that she was diagnosed with osteopenia[4] of the left hip. (T at 17). Plaintiff contends that the ALJ's step two analysis is flawed because it does not contain a determination as to whether Plaintiff's osteoporosis and osteopenia, either considered separately or in combination, were severe impairments. This Court finds Plaintiff's argument unpersuasive.

As noted above, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995); see also McConnell v. Astrue, No. 03-CV-0521, 2008 WL 833968, at *4 (N.D.N.Y. Mar. 27, 2008);Murphy v. Secretary of Health and Human Services, 872 F. Supp. 1153, 1156 (E.D.N.Y. 1994). The record lacks any evidence that Plaintiff's osteoporosis and/or osteopenia impaired her ability to perform basic work activities. Plaintiff bears the

---

[4]"Osteopenia is defined by one authoritative medical source as reduced bone mass due to a decrease in the rate of osteogenesis to the extent that there is insufficient compensation of normal bone lysis." Farr v. Astrue, No. 07-CV-0061, 2009 WL 1955442, at *2 n.5 (N.D.N.Y. 2009)(citation omitted).

burden of proof as to this issue, but has not introduced any medical evidence or assessments suggesting that these conditions, either alone or in combination with other impairments, limited Plaintiff's ability to engage in basic work activities (*e.g.* sit, stand, walk).

Plaintiff cites Miles v. Barnhart, No. 06-CV-391, 2008 WL 5191589 (N.D.N.Y. Dec. 8, 2008) in support of her argument. In Miles, the *pro se* plaintiff had been diagnosed with osteopenia. The ALJ made no mention of the condition in his decision. Id. at *6. Thus, because the ALJ had not considered an impairment about which evidence had been submitted, the court concluded that a remand was required. Id. In the present case, by contrast, although the ALJ did not specifically discuss whether Plaintiff's osteoporosis and osteopenia were severe impairments, he did reference the medical evidence as to those conditions and was therefore aware of the diagnoses. (T at 17, 20). Moreover, the ALJ discussed and considered the conditions when making his RFC determination. (T at 20).

Also, the court in Miles was willing to entertain the hypothesis, apparently unsupported by any specific evidence in the administrative record, that the plaintiff's increased risk of bone fracture resulting from osteopenia "likely . . . significantly limits her physical ability to do basic work activities." Miles, 2008 WL 5191589, at *7. This Court does not believe this type of speculation is appropriate as to an issue on which the claimant bears the burden of proof. Although this Court is mindful of the Commissioner's obligation to develop the record, the record in this case included evidence of Plaintiff's diagnoses, a consultative examination, and extensive treatment records discussing Plaintiff's osteoporosis and osteopenia. None of these records included any indication that Plaintiff's osteoporosis and/or osteopenia, either alone or in combination with other impairments,

limited her ability to perform basis work activities.   Accordingly, this Court finds no reversible error with respect to this aspect of the ALJ's decision.

Plaintiff also argues that her low back pain and residual symptoms from bowel resection were severe impairments.  Plaintiff points to medical records indicating that she complained of back pain and received treatment at the Pain Clinic (T at 162-63), experienced "some" back spasms during February 2005 hospital visit, and received prescription treatment and physical therapy to address low back pain described as "severe." (T at 99-108).

The ALJ referenced Plaintiff's "alleged low back pain" and her "status post surgery for small bowel resection," but concluded that the record did not show that these impairments caused more than minimal limitation on Plaintiff's ability to perform basic work activities for a continuous period of at least 12 months.  (T at 18). This Court finds that the ALJ's conclusion was supported by substantial evidence.

The record indicates that Plaintiff experienced "great" pain relief and made "good progress" with regard to her low pain back as a result of prescription medication and physical therapy. (T at 100, 175, 232).  According to progress notes, Plaintiff described her pain as decreasing to "0-1" and "5-6" out of a possible 10. (T at 224-25).  Plaintiff's physical therapist did not assess any limitations arising from the low pain back and, in fact, Plaintiff was encouraged to exercise. (T at 231, 233, 239).  When asked to describe her pain in July of 2007, Plaintiff indicated that it was intermittent and "moderate" and stated that she could sit in any chair as long as she liked, had some pain while standing (but it did not increase with time), and had some pain while walking (but it did not increase with distance). (T at 240).  Regarding the after-effects of her bowel resection, the record indicated that, although

Plaintiff was non-compliant with her medications, she recovered "very well" from her surgery. (T at 156-58). The record does not contain any indication that Plaintiff's low back pain and/or post-surgical issues, either alone or in combination, caused more than minimal limitation on Plaintiff's ability to perform basic work activities for a continuous period of at least 12 months. Accordingly, this Court finds no error with respect to this portion of the ALJ's decision.

### b.    RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ determined that Plaintiff retained the RFC to perform the full range of light work, including lifting 20 pounds occasionally, 10 pounds frequently, standing/walking/sitting for about 6 hours in an 8-hour workday. (T at 18). Plaintiff contends that the ALJ erred by failing to assess whether Plaintiff could perform work on a

11

regular and continuing basis, as required under Social Security Ruling ("SSR") 96-8p.  In this regard, Plaintiff notes that her ability to work on a regular and continuing basis is impaired by frequent hospitalizations, bouts with loose stools and constipation, significant weight loss, and occasional involuntary bowel movements.

This Court finds no error as to the ALJ's consideration of Plaintiff's ability to perform work on a regular and continuing basis, but does find that a remand is necessary with respect to the ALJ's finding that Plaintiff was capable of performing light work.

The ALJ considered Plaintiff's ability to work an 8-hour day (T at 18) and considered her testimony concerning the extent and severity of her bowel problems. (T at 20). Plaintiff's claim that she "sometimes" has involuntary bowel movements "three or four times a day" (T at 449) is contradicted by the record.  The report of Dr. Weiskopf, the consultative examiner, noted Plaintiff's symptoms and mentioned diarrhea, but not involuntary bowel movements. (T at 124).   A November 2007 report from Dr. Lazzarini of Syracuse Gastroenterological Associates noted that Plaintiff had "good symptom control." (T at 156). A report from July of that year indicated that she had been "doing very well" during the preceding five months. (T at 158).   A September 2005 report from Syracuse Gastroenterological Associates described Plaintiff's bowel frequency without any mention of involuntary movements. (T at 167).   Likewise, a June 2007 treatment note from Dr. McMahon, Plaintiff's treating physician, noted Plaintiff's bowel frequency without any mention of involuntary movements. (T at 202).

This Court does find error with regard to the ALJ's determination concerning Plaintiff's limitation as to lifting.  Richard Weiskopf, M.D., a consultative examiner, opined that Plaintiff had no limitations as to sitting and mild limitation as to standing and walking.

(T at 127).   However, Dr. Weiskopf indicated that Plaintiff had "moderate-to-severe limitation on bending, lifting, climbing, and carrying." (T at 127).  The ALJ "accepted" Dr. Weiskopf's assessment (T at 19), but made no attempt reconcile his conclusion that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently with Dr. Weiskopf's determination that Plaintiff had a moderate-to-severe limitation as to lifting.  This is significant because Dr. Weiskopf was the only examining medical source to provide a detailed assessment of Plaintiff's limitations.

"Light work" involves "lifting no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967 (emphasis added). "'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10.

Given Dr. Weiskopf's finding of "moderate-to-severe" limitation as to lifting (and the absence of any indication from another examining source of a lesser limitation), this Court cannot find that this portion of the ALJ's RFC assessment is supported by substantial evidence.  It may be the case that Dr. Weiskopf only intended to indicate a moderate limitation as to lifting, which would not necessarily be incompatible with an ability to perform light work, but neither this Court nor the ALJ can properly speculate as to such matters. This issue should be re-visited on remand.  See Lugo v. Barnhart, No. 04 Civ. 1064, 2008 WL 515927, at *18 (S.D.N.Y. Feb. 8, 2008)(remanding because it was "not clear from the ALJ's decision how [consultative examiners'] assessments of 'mild' or 'moderate' limitations corresponded with the SSA physical-exertion requirements for light work").

Moreover, one of Plaintiff's treating physicians, Dr. Okonkwo, refused to complete a functional assessment, indicating that he was "unable to assess" Plaintiff's limitations. (T at 421-26).  On remand, the ALJ should consider contacting Dr. Okonkwo to determine

13

why he felt unable to assess these matters. See generally Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005)(noting that the ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions).

      **c.    Credibility**

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

Plaintiff testified that she could only lift about 4 pounds. (T at 459). The ALJ found this testimony not credible and conclusion that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently. In light of the matters referenced above, the ALJ

15

should revisit the question of Plaintiff's credibility after further development with respect to this issue on remand.

### d.    Failure to Consult a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting,

16

standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

In this case, the ALJ used the Grids in reaching his disability determination. However, the ALJ's consultation of the Grids was based upon his RFC assessment with regard to Plaintiff's physical limitations. That determination was impacted by the ALJ's errors in considering Plaintiff's exertional limitation as to lifting, as discussed above. As such, the step 5 analysis should be revisited on remand following reconsideration of that portion of the ALJ's decision.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

17

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 7, 2010

Syracuse, New York

### V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

18

of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 7, 2010

Victor E. Bianchini
United States Magistrate Judge